DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence. The jury found Jeremy Green, defendant below and appellant herein, guilty of one count of unlawful sexual conduct with a minor, in violation of R.C.2907.04, and one count of gross sexual imposition, in violation of R.C. 2907.05.
 {¶ 2} Appellant raises two assignments of error for review:
i. FIrst assignment of error:
ii. "The trial court erred to the prejudice of appellant when it entered judgment of conviction on two counts of the indictment where such judgment was against the manifest weight of the evidence."
iii. Second assignment of error:
iv. "The trial court erred to the prejudice of appellant when it failed to dismiss count one of the indictment at the conclusion of state's case-in-chief."
 {¶ 3} On August 8, 2003, the Ross County Grand Jury returned an indictment charging appellant with one count of unlawful sexual conduct with a minor, in violation of R.C. 2907.04, and two counts of gross sexual imposition, in violation of R.C.2907.05.
 {¶ 4} Beginning on November 24, 2003, and continuing until November 25, 2003, the court held a jury trial. On November 25, 2003, the jury found appellant guilty of count one of unlawful sexual conduct with a minor and guilty of count two of gross sexual imposition, and not guilty on count three of gross sexual imposition.
 {¶ 5} The first count of unlawful sexual conduct with a minor resulted from an incident with a fifteen year old female (Victim A). Victim A testified at trial that she met appellant while living with her grandparents in Chillicothe, Ohio. During one encounter, Victim A informed appellant that she had a pet ferret that she wanted to give away. Appellant said that he was "interested" in the ferret and went with Victim A to her grandparent's house. Victim A also testified that she had told appellant during a previous encounter that she was fifteen years of age.
 {¶ 6} Victim A stated that after they arrived at her grandparent's house, she and appellant watched television. Appellant then asked her if she "wanted to have sex with him." She testified that she ignored his initial inquiry, but when he asked a second time, she consented. She stated that she and appellant then had consensual sexual intercourse. She also testified that this occurred when it was "close to winter" in 2002.
 {¶ 7} Count two of gross sexual imposition stems from a separate incident with an eleven year old female (Victim B). Victim B testified at trial that she met appellant when she spent the night at a friend's house. Appellant was also at the house, visiting the older brother of the victim's friend. Victim B testified that she and appellant, among others, stayed up late to watch a movie. During the movie appellant went into the laundry room to smoke a cigarette, and Victim B and several others accompanied him. Victim B stated that while they were in the laundry room she stood directly behind appellant. She testified that appellant grabbed her arm and forced her hand to touch appellant's penis. A witness who was present in the laundry room testified that she saw appellant grab Victim B's hand and "pull it towards the front of him. . . . towards his penis." The witness also testified that she saw appellant's erect penis protruding "above his shorts" after he tried to pull the victim's hand toward it.
 {¶ 8} On November 6, 2003, the jury found appellant guilty of both offenses. Appellant filed a timely notice of appeal.
 1. I {¶ 9} In his first assignment of error, appellant asserts that his convictions are against the manifest weight of the evidence. Specifically, appellant argues that as to count one the prosecution failed to prove beyond a reasonable doubt that the event occurred within the time frame set out in the indictment. As to count two, appellant argues that the evidence does not support a finding that his actions were for the purpose of sexually arousing either appellant or the victim.
 {¶ 10} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and consider the credibility of witnesses, while bearing in mind that credibility generally is an issue for the trier of fact to resolve. See State v. Issa (2001), 93 Ohio St.3d 49,67, 752 N.E.2d 904; State v. Thomas (1982), 70 Ohio St.2d 79,80, 434 N.E.2d 1356; State v. Dehass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 11} It is fundamental that the trier of fact is to determine the weight given the evidence and the credibility given to the testimony of witnesses. See State v. Dye (1998),82 Ohio St.3d 323, 329, 695 N.E.2d 763, 768; State v. Frazier (1995),73 Ohio St.3d 323, 339, 652 N.E.2d 1000, 1014; State v.Williams (1995), 73 Ohio St.3d 153, 165, 652 N.E.2d 721, 732. Accordingly, the trier of fact may believe all, part, or none of the testimony of each witness who appears before it. See Statev. Long (1998), 127 Ohio App.3d 328, 335, 713 N.E.2d 1, 5;State v. Nichols (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80,88; State v. Harrison (1989), 63 Ohio App.3d 58, 63,577 N.E.2d 1144, 1147. We also acknowledge that a trier of fact is much better situated than an appellate court to view the witnesses and observe their demeanor, their gestures and their voice inflections, and to use those observations to weigh the credibility of their testimony. See State v. Shin (1997),118 Ohio App.3d 637, 641; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Thus, reviewing courts should defer to the trier of fact on matters of evidentiary weight and witness credibility.
 {¶ 12} Once a reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541 (quoting State v. Martin [1983],20 Ohio App.3d 172, 175, 485 N.E.2d 717). If the state presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. Eley
(1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. A reviewing court should find a conviction against the manifest weight of the evidence only in the "`exceptional case in which the evidence weighs heavily against conviction.'" Thompkins,78 Ohio St.3d at 387, 678 N.E.2d 541 (quoting Martin, 20 Ohio App.3d at 175,485 N.E.2d 717); see also, State v. Lindsey (2000),87 Ohio St.3d 479, 483, 721 N.E.2d 995, 1002.
 {¶ 13} Appellant was charged in count one with unlawful sexual conduct with a minor, in violation of R.C. 2907.04. The precise date and time of the offense are not essential elements of that crime. Thus, the failure to provide exact dates and times in an indictment will generally not be fatal to the prosecution.State v. Sellards (1985) 17 Ohio St.3d 169, 171,478 N.E.2d 781, 784. This is especially true in cases involving child sexual abuse. See State v. Stepp (Jan. 13, 1997), Pike App. No. 96CA568, wherein the majority quoted State v. Barnecut (1988),44 Ohio App.3d 149, at 151-152, 542 N.E.2d 353, at 355 for the proposition that these cases "often make it difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses."
 {¶ 14} Still, when an accused requests a bill of particulars, the prosecution must supply specific dates and times for the alleged offense if it possesses such information. Sellards. If the prosecution is unable to provide more specific dates for the offense, the absence of specific dates may be fatal to the prosecution if it results in a material detriment to the accused in preparation of a defense. Sellards. This might be true if the defendant asserted an alibi or claimed that he was indisputably elsewhere during part, but not all, of the time frame specified. Sellards.
 {¶ 15} In the instant case we note that the appellant does not argue that he has been prejudiced in his ability to prepare a defense. Appellant does not claim that the indictment was faulty nor did he request a bill of particulars. Further, appellant did not present an alibi at trial nor did he claim that he was indisputably elsewhere during the interval specified. Instead, appellant argues that the prosecution failed to prove that the crime took place during that time frame.
 {¶ 16} Again, we note the prosecution was not required to prove the exact date of the offense because the date is not an element of the offense. However, the prosecution is required to prove beyond a reasonable doubt that the incident occurred within the time frame specified in the indictment. State v. Stepp
(1997), 117 Ohio App.3d 561, 567, 690 N.E.2d 1342, 1346.
 {¶ 17} In the case sub judice, the prosecution has met this burden. In order to return a guilty verdict, the jury had to believe the victim's testimony that the sexual conduct occurred within the time frame set out in the indictment. State v.Ambrosia, 67 Ohio App.3d 552, 559, 587 N.E.2d 892, 897. The indictment states that the sexual conduct occurred "on or about the period beginning the 1st day of November, 2002, through the 30th day of November, 2002". At trial, the Victim A testified that the sexual conduct took place in 2002, when it was "close to winter." Further, the trial took place in November 2003, and the victim testified that the sexual conduct occurred "a year ago." This is a question of credibility, and the jury must have believed the victim's testimony that the criminal activity took place in November of 2002. It is well within the province of the jury to make that determination, and we will not supplant the judgment of the trier of fact. We therefore overrule appellant's first assignment of error as to count one of unlawful sexual conduct with a minor.
 {¶ 18} Appellant was charged in count two of the indictment with gross sexual imposition in violation of R.C. 2907.05. That statute provides, in pertinent part:
 {¶ 19} No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
• * *
 {¶ 20} (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
 {¶ 21} "Sexual contact" is "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01 (B).
 {¶ 22} Appellant contends that the evidence does not support a finding that he intended to sexually arouse or gratify either himself or Victim B. It is true that "criminal intent can never be proven by the direct testimony of third parties." State v.Huffman (1936), 131 Ohio St. 27, 1 N.E.2d 313, syllabus. Therefore, the "existence of prurient motivations may be discerned from the type, nature and circumstances of the contact, along with the personality of the defendant." State v. Uhler
(1992), 80 Ohio App.3d 113, 123, 608 N.E.2d 1091, 1097. The trier of fact may infer that the defendant's motive was sexual arousal or gratification "from the totality of the circumstances." Statev. Edwards, (March 6, 2003), Cuyahoga App. No. CR-417956, 2003-Ohio-998.
 {¶ 23} In the case sub judice the prosecution presented evidence that appellant grabbed Victim B's arm and tried to put her hand on his exposed penis. A witness testified that she observed appellant grab the victim's hand and "pull it towards the front of him. . . . towards his penis." The witness also testified that after this conduct she observed appellant's erect penis protruding from his shorts.
 {¶ 24} Based upon this testimony, the jury could logically infer beyond a reasonable doubt that appellant engaged in this conduct to sexually arouse or gratify himself. We cannot say that the jury clearly lost its way or created a manifest injustice, and we will not disturb their verdict.
 {¶ 25} Accordingly, we overrule appellant's first assignment of error as to count two of gross sexual imposition.
 1. II {¶ 26} In his second assignment of error, appellant asserts that the trial court erred to the prejudice of appellant when it failed to dismiss count one of the indictment at the conclusion of the prosecution's case. Specifically, appellant argues that the court should have dismissed count one because the prosecution failed to prove that the conduct occurred within the time frame set out in the indictment. This is essentially the same argument that appellant presented in the first assignment of error. The same reasoning applies and, as we discussed in our disposition of appellant's first assignment of error, supra, the prosecution has met the burden of proving that the sexual conduct occurred within the time frame set out in the indictment.
 {¶ 27} Accordingly, based upon the forgoing reasons, we overrule appellant's assignments of error and affirm the trial court's judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Harsha, J.: Concur in Judgment Opinion.