[Cite as *State v. Neal*, 2016-Ohio-64.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

STATE OF OHIO,                          :         Case No. 15CA1

    Plaintiff-Appellee,                 :

    v.                                   :         <u>DECISION AND
                                                  JUDGMENT ENTRY</u>

TERRY E. NEAL,                          :

    Defendant-Appellant.                :         **RELEASED: 1/6/2016**

<u>APPEARANCES</u>:

Ryan Shepler, Kernen & Shepler, LLC, Logan, Ohio, for appellant.

Laina R. Fetherolf, Hocking County Prosecuting Attorney, and William L. Archer, Jr., Hocking County Assistant Prosecuting Attorney, Logan, Ohio, for appellee.

Harsha, J.

{¶1}   After a jury convicted Terry E. Neal of four counts of unlawful sexual conduct with a minor, the court sentenced him to an aggregate 16-year prison sentence. Now Neal asserts that his conviction on Count V of the indictment is not supported by the evidence. We agree. Because the state did not present sufficient evidence that the offense occurred within the time frame alleged in Count V, i.e. "on or about the 10th day of June, 2013," we reverse that conviction for unlawful sexual conduct with a minor. Because we sustain Neal's first assignment of error, his alternative argument that his trial counsel was ineffective for failing to timely move for judgment of acquittal on this count is moot.

{¶2}   Next Neal contends that the failure of the state to provide a more specific date to Count XIV of the indictment violated his right to due process. Although that count alleged that Neal committed the offense of unlawful sexual conduct with a minor

"sometime between the 22nd day of November, 2012 and the 25th day of December, 2012," the victim and a witness specified at trial that the offense occurred on Thanksgiving night, November 22, 2012.  The lack of specificity in the indictment did not result in a due process violation because Neal denied any sexual conduct whatsoever with the victim, did not raise an alibi defense, and the evidence established the date of the offense within the time period alleged.  We reject Neal's second assignment of error.

{¶3}    Neal also claims that the admission of evidence about the invocation of his right to counsel violated his Fifth Amendment rights, and his trial counsel's failure to object to that evidence constituted ineffective assistance.  Neal did not establish plain error under the Fifth Amendment even though it appears that the state's comments and argument were improper. Neal cannot establish a reasonable probability that the outcome of the trial would have been different in light of the overwhelming evidence, including the testimony of the child victim, corroborating witnesses, and the child's DNA found on the underwear that Neal was wearing during two of the offenses upon which he was convicted.  Likewise, trial counsel's failure to object did not amount to ineffective assistance due to lack of prejudice.  We reject his third assignment of error.

{¶4}    Next Neal argues that his four convictions for unlawful sexual conduct with a minor were against the manifest weight of the evidence.  Our disposition of his first assignment of error renders Neal's manifest-weight argument moot for Count V. However, on his remaining three convictions the state introduced the testimony of the victim, witnesses, and DNA evidence that Neal engaged in oral, anal, and vaginal sex with the minor victim in separate incidents.  Based on this evidence the jury properly found the essential elements of the crimes proven beyond a reasonable doubt. Because

the jury did not clearly lose its way or create a manifest miscarriage of justice, we reject Neal's fourth assignment of error.

{¶5}    Next Neal asserts that the trial court erred by failing to merge Counts IX and X of the indictment, which referred to two crimes occurring on the same date. However, the offenses were committed separately and with separate animus—the first offense was anal intercourse that was interrupted when the victim's brother walked in. And the second offense was vaginal intercourse that happened after the passage of a significant amount of time and the occurrence of unrelated conduct. Therefore, the trial court properly convicted and sentenced Neal for both offenses.  We reject Neal's fifth assignment of error.

{¶6}    Next Neal contends that the trial court erred in sentencing him to consecutive terms of incarceration for his convictions.  Because the trial court made the requisite findings mandated by R.C. 2929.14(C)(4) at its sentencing hearing, incorporated its findings into its sentencing entry, and the record supports those findings, we reject Neal's sixth assignment of error.

{¶7}    Finally, Neal claims that the trial court's order permitting the sheriff to use all necessary restraints was unjustified and violated his right to due process.  Because the record contains no evidence that the restraints were visible to the jurors, caused Neal any physical discomfort, or interfered with Neal's ability to testify or communicate with his trial counsel, we reject Neal's seventh assignment of error.

{¶8}    We sustain Neal's first assignment of error, reverse his conviction for unlawful sexual conduct with a minor as charged in Count V of the indictment, and remand the cause to the trial court to discharge him on that count.  We overrule Neal's

remaining assignments of error and affirm the remainder of his convictions and sentence.

## I. FACTS

{¶9} The Hocking County Grand Jury returned an indictment charging Terry E. Neal with five counts of sexual battery, five counts of unlawful sexual conduct with a minor, and five counts of gross sexual imposition. Counts I, II, and III charged Neal with sexual battery, unlawful sexual conduct with a minor, and gross sexual imposition for an incident involving Neal and H.G., a minor, "sometime between the 1st day of January, 2013 and the 1st day of April, 2013." Counts IV, V, and VI charged Neal with sexual battery, unlawful sexual conduct with a minor, and gross sexual imposition for an incident involving Neal and H.G., a minor, "on or about the 10th day of June, 2013." Counts VII, VIII, IX, X, XI, and XII charged Neal with two counts each of sexual battery, gross sexual imposition, and unlawful sexual conduct with a minor for incidents involving Neal and H.G., a minor, "on or about the 13th day of June, 2013." Counts XIII, XIV, and XV charged Neal with sexual battery, unlawful sexual conduct with a minor, and gross sexual imposition "sometime between the 22nd day of November, 2012 and the 25th day of December 2012." At his arraignment Neal entered a plea of not guilty to the charges. Neal's trial counsel requested a bill of particulars setting forth more specifically the nature of the offenses charged, but the state did not respond.

{¶10} Prior to trial Neal filed a motion to permit him to appear in civilian clothing and without restraints at all proceedings. The trial court granted the motion in part but denied it in part. The trial court permitted Neal to appear at all future hearings, including trial, in non-jail clothing. However, the trial court permitted the sheriff to use all

necessary restraints, with the sheriff required "to ensure, as much as possible, that the jury does not see [Neal] in restraints."

{¶11}  When the case proceeded to a jury trial the evidence established that H.G. was born in September 1999.  After living with relatives because her mom had substance-abuse problems and experienced financial difficulties, H.G. moved back with her mother in an apartment on West Second Street in Logan.  H.G., her mother, her brother A.G., and her mother's boyfriend, Neal, lived at the apartment.  According to H.G., she initially had a crush on Neal and flirted with him.  Neal reciprocated by telling her she was beautiful and providing her with cigarettes, alcohol, and marijuana although she was only 12 at the time.

{¶12}  Sometime between February and April 2012, H.G. came home from school and Neal told her to come into the bedroom he shared with her mother.  He then told her to pull down her shorts and bend over and when she did, he inserted his penis in her vagina.  Neal then stopped because he thought he heard someone calling down the hallway.  When they returned to the living room, Neal sat beside H.G. and advised her that if she told anyone what had happened, he would kill her and then her family.  This frightened H.G. because Neal often got drunk and had physical altercations with her family, including frequently beating up her mother.  According to one of H.G.'s brothers, G.G., Neal hit their mother about every other day.

{¶13}  The next incident occurred on Thanksgiving, November 22, 2012 at the West Second Street apartment in Logan after her mom went outside, her brother left, and her friend Chelsie went to the kitchen to get something to eat.  H.G. was sitting on the couch when Neal stood up and told her to perform oral sex on him.  She complied,

but Neal stopped when her mother returned.  Chelsie corroborated H.G.'s account, testifying that from the kitchen she witnessed H.G. performing oral sex on Neal in the living room on Thanksgiving 2012.

{¶14}  According to H.G. the next occurrence happened after they had been evicted from the West Second Street apartment and had moved to a Zanesville Avenue apartment in Logan.  She did not recall the date, but she thought it occurred in 2013 and that it was snowing in the beginning that day.  On this date her mother had passed out drunk in the dining room and Neal's brother had left the living room to get himself something to eat, leaving Neal alone with H.G. in the living room.  Neal told H.G. to pull down her pants and when she did, he stuck his penis in her vagina.  When Neal's brother returned, he asked Neal to let him "get some," but Neal told him to wait his turn.  Neal stopped when H.G.'s mother started coughing and woke up in the dining room.

{¶15}  The final two occurrences happened on June 13, 2013 in the Zanesville Avenue apartment.  At that time, H.G., her mother, her brothers G.G. and A.G., an unrelated female, and Neal lived there.  Neal and H.G. were in the front room when H.G.'s mother passed out on the couch and the others left for their rooms.  Neal came over to the love seat where H.G. was sitting and told her to pull down her shorts and bend over.  After she did so, Neal stuck his penis in her anus until G.G. walked out of his bedroom and asked them if they wanted pizza.  H.G. testified that the intercourse hurt.  G.G. confirmed that when he came out of the bedroom and into the front room that night, both Neal and H.G. jumped up from the love seat and he knew something was going on between them, but wasn't certain exactly what.  A Christy's Pizza

manager confirmed that the store delivered pizza on the evening of June 13, 2013 to the Zanesville Avenue residence.

{¶16} After they ate the pizza G.G. and his girlfriend returned to their room and A.G. returned to his bedroom. Neal told H.G. to bend over again and he stuck his penis in her vagina. H.G. identified the white shorts she was wearing as well as the blue boxer shorts that Neal was wearing on that date.

{¶17} H.G. testified that the police investigated a report of sexual activity between her and Neal in February 2013, but at that time H.G. denied any sexual conduct with Neal because she was scared and wanted to protect herself. A couple days after the June 13 incidents, however, the police arrested Neal for assaulting H.G.'s mother, resulting in a domestic-violence charge that he ultimately pleaded guilty to. A few days later, on June 18, 2013, H.G. and her mother reported the sexual incidents involving Neal and H.G. to the police. The Ohio Bureau of Criminal Investigation ("BCI") tested the white shorts and blue boxer shorts that H.G. identified as the shorts she wore and the boxer shorts Neal wore when he had anal and vaginal intercourse with her on June 13, 2013. BCI found H.G.'s DNA on both her shorts and on Neal's boxer shorts.

{¶18} At the conclusion of the state's case-in-chief, the state moved to amend Counts I, II, and III of the indictment to conform to the evidence that the incident occurred between February 1, 2012 and April 1, 2012 instead of the specified period between January 1, 2013 and April 1, 2013. Neal's trial counsel requested that the motion be denied and that these charges be dismissed for lack of proof that the offenses occurred during the charged time period. The trial court took the matter under advisement, and the defense proceeded with its case.

**{¶19}**   Neal was the only witness who testified for the defense.  He claimed that he never had any sexual conduct with H.G.  He also denied that the blue boxer shorts were his.  He claimed that he was wearing a different pair of blue underwear on June 13, 2013 when the last sexual incidents with H.G. were alleged to have occurred.  He further testified that H.G., her brother G.G., and her friend Chelsie were all lying.  Neal conceded that he ended up pleading guilty to domestic-violence charges involving H.G.'s mom and brother.

**{¶20}**   At the conclusion of the evidence the trial court granted Neal's motion to dismiss Counts I, II, and III. Those counts involved the incident that the indictment had charged as having occurred between January 1, 2013 and April 1, 2013, but the evidence established occurred between February 1, 2012 and April 1, 2012.  The jury returned verdicts finding Neal guilty of the four remaining counts charging him with unlawful sexual conduct with a minor—Counts V, IX, X, and XIV—and found him not guilty of the remaining counts.

**{¶21}**   At sentencing Neal filed a motion to set aside his conviction on Count V because there was no evidence presented at trial that he committed the offense of unlawful sexual conduct with a minor on the charged date of June 10, 2013.  The trial court denied the motion because it was untimely.  The court sentenced Neal to prison terms of four years for each of his four convictions and ordered that they be served consecutively to each other.  This appeal followed.

II. ASSIGNMENTS OF ERROR

**{¶22}**   Neal assigns the following errors for our review:

1. The conviction on Count V of the indictment is not supported by the evidence presented at trial.

      a. The evidence presented at trial is insufficient to prove each element of the offense beyond a reasonable doubt.

      b. Trial counsel's failure to timely move for a judgment of acquittal pursuant to Crim.R. 29 on Count V of the indictment constitutes ineffective assistance of counsel, which prejudiced the defendant.

2. The failure of the State to provide a more specific date to [C]ount XIV of the indictment violates the defendant's right to due process.

3. The admission of evidence relating to defendant's invocation of his right to counsel prejudiced the jury, and failure to object to that evidence constitutes ineffective assistance of counsel.

4. The convictions on Count V, Count IX, Count X, and Count XIV are against the manifest weight of the evidence.

5. The trial court erred in failing to merge for sentencing Count IX and Count X of the indictment.

6. The trial court erred in sentencing the defendant to consecutive terms of incarceration for the convictions.

7. The trial court's order permitting the Sheriff to use all necessary restraints was not justified by the record, and violated Mr. Neal's right to due process.

### III. LAW AND ANALYSIS

#### A. Count V: Sufficiency of the Evidence

**{¶23}** In his first assignment of error Neal asserts that his conviction on Count V of the indictment is not supported by sufficient evidence.[1] "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*,

---

[1] Although the trial court denied the motion as untimely, the state does not raise this issue in its appellate brief. Therefore, we do not consider that basis for denying the motion.

139 Ohio St.3d 12, 2014–Ohio–1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61

Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v.*

*Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court does not

determine credibility or weigh the evidence, but simply decides whether the evidence, if

believed, satisfied the requirements of a prima facie case. *See, e.g., State v. Wray*, 4th

Dist. Gallia No. 00CA08, 2001 WL 243488, *1 (Jan. 2, 2001); *see also State v. Kirkland*,

140 Ohio St.3d 73, 2014–Ohio–1966, 15 N.E.3d 818, ¶ 132.

{¶24}  "An indictment charging sexual offenses against children 'need not state

with specificity the dates of alleged abuse, *so long as the prosecution establishes that*

*the offense was committed within the time frame alleged.*' "  (Emphasis added.)  *State v.*

*Czech*, 8th Dist. Cuyahoga No. 100900, 2015-Ohio-1536, ¶ 14, quoting *State v Yaacov*,

8th Dist. Cuyahoga No. 86674, 2006-Ohio-5321, ¶ 17.  Ohio courts have repeatedly

recognized that the time and date of an offense is ordinarily not required in an

indictment, but the state must still establish that the offense charged occurred within a

reasonable time in relation to the dates fixed in the indictment.  *State v. McIntire*, 6th

Dist. Huron No. H-13-018, 2015-Ohio-1057, ¶ 42, citing *State v. Dodson*, 12th Dist.

Butler No. CA2010-08-191, 2011-Ohio-6222, ¶ 40.  We agree.  *See State v. Green*, 4th

Dist. Ross No. 04CA2760, 2004-Ohio-5089, ¶ 16 ("the prosecution was not required to

prove the exact date of the offense because the date is not an element of the offense.

However, the prosecution is required to prove beyond a reasonable doubt that the

incident occurred within the time frame specified in the indictment").

{¶25}  Count V of the indictment charged Neal with unlawful sexual conduct with

a minor "on or about the 10th day of June, 2013."  But the state failed to prove beyond a

reasonable doubt that the offense occurred within a reasonable proximity to that time period. Instead, H.G. testified that she thought that this incident occurred sometime in 2013 before the final two incidents, which occurred on June 13, 2013, and that she thought it was snowing in the beginning of the day. At best, the evidence indicated that the incident might have occurred during early 2013, when snow was likely, and not around June, when it was unlikely. The state did not seek to amend this charge to conform to the evidence introduced at trial. Therefore, the state failed to establish by sufficient evidence that the charged offense occurred within the alleged period. In light of this holding, we need not address Neal's alternative argument that his trial counsel was ineffective for failing to timely move for judgment of acquittal on this charge because it is rendered moot by our disposition of his initial contention. We sustain Neal's first assignment of error.

B. Due Process: Count XIV

{¶26} In his second assignment of error Neal contends that the failure of the state to provide a more specific date for Count XIV of the indictment violated his right to due process. This count alleged that Neal committed the offense of unlawful sexual conduct with a minor "sometime between the 22nd day of November, 2012 and the 25th day of December, 2012." However, H.G. and her friend Chelsie unequivocally testified that this incident occurred on the evening of November 22, 2012. Neal claims that had the state timely responded to his request for a bill of particulars or supplemented its discovery limiting the alleged date and time to November 22, 2012, "he may have been able to supply an alibi."

**{¶27}** As noted previously an indictment charging a sexual offense against children need not specify the date of the alleged abuse as long as the state establishes that the offense was committed within the time frame alleged. *Czech*, 2015-Ohio-1536, at ¶ 14; *McIntire*, 2015-Ohio-1057, at ¶ 42. An allowance for reasonableness and inexactitude must be made for such cases because many child victims are unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time and the accused and the victim are related or reside in the same household, which facilitates the extended period of abuse. *See State v. Adams*, 2014-Ohio-5854, 26 N.E.3d 1283, ¶ 51 (7th Dist.), citing *Yaacov*, 2006-Ohio-5321, at ¶ 17.

**{¶28}** However, the state initially charged that the incident in Count XIV occurred over a period between November 22 and December 25, 2012 because as H.G. conceded, she had initially told the police that this was the applicable period. At trial the state established that the crime occurred during the alleged period—on November 22, 2012. Furthermore, nothing in the record indicates that the failure to provide Neal with a more specific date before trial prejudiced his defense. He never filed a notice of his intention to rely on an alibi and he did not claim that he was somewhere else when this crime occurred. Instead, he claimed that he never engaged in any sexual conduct at any time with H.G. and that she and the other witnesses were lying. Courts have repeatedly affirmed convictions under similar circumstances, finding that there is no due process violation because the defendant denied any sexual contact whatsoever with the victim and thus the lack of specificity in the indictment as to dates or places of alleged

abuse did not result in prejudice to the accused's defense. *Czech* at ¶ 21, citing *Yaacov*.

**{¶29}** That being said, we acknowledge that providing an alibi for a specific date is much easier than providing one for a range of dates and warn the state that it has a duty to update and provide as specific a date and time of the offense as its investigation permits. Moreover, nothing in our decision should be taken as approving "trial by ambush." Nonetheless, we cannot find error in a direct appeal based upon mere speculation that Neal might have been able to provide an alibi. That is not to say that a postconviction relief effort would be futile on these grounds.

**{¶30}** The date of the offense is not an essential element of Count XIV; the state established that the offense occurred within the time period alleged; and based on his defense strategy nothing in this record indicates the failure to allege a more specific date prejudiced Neal's ability to defend himself. Therefore, he suffered no violation of his right to due process. We overrule Neal's second assignment of error.

### C. Evidence of Defendant's Invocation of Right to Counsel

**{¶31}** In his third assignment of error Neal claims that the admission of evidence relating to the invocation of his right to counsel prejudiced the jury and that his trial counsel's failure to object to this evidence constituted ineffective assistance of counsel.

**{¶32}** The Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." *State v. Leach*, 102 Ohio St.3d 135, 2004–Ohio–2147, 807 N.E.2d 335, ¶ 11. "The Fifth Amendment guarantees a criminal defendant's right against self-incrimination, which

includes the right to silence during police interrogation. * * * Additionally, a defendant can invoke his rights 'at any time prior to or during questioning[.]' " *State v. Harper*, 4th Dist. Vinton No. 11CA684, 2012–Ohio–4527, ¶ 14, quoting *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "[W]hen a person is subject to custodial interrogation, he or she must be informed of certain rights, including his or her rights to remain silent and to an attorney." *State v. Bennett*, 9th Dist. Lorain No. 12CA010286, 2014–Ohio–160, ¶ 62, citing *Miranda.* " 'A suspect's right to an attorney during questioning * * * is derivative of his [or her] right to remain silent.' " *Leach* at ¶ 13, quoting *Wainwright v. Greenfield*, 474 U.S. 284, 298–299, 106 S.Ct. 634, 88 L.Ed.2d 623 (Rehnquist, J., concurring).

**{¶33}** "Once a person invokes his or her Fifth Amendment right to remain silent, the State cannot use the person's silence [either in pre-arrest or post-arrest circumstances] as substantive evidence of guilt in its case-in-chief." *Bennett* at ¶ 63, citing *Wainwright*, 474 U.S. at 295 (post-arrest, post-Miranda silence is inadmissible as substantive evidence of guilt in the state's case-in-chief), and *Leach* at syllabus ("Use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination*"); see also  State v. Perkins*, 3d Dist. Hancock No. 5–13–01, 2014–Ohio–752, ¶ 49, citing *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and *Leach* at ¶ 18 ("Evidence submitted by the State regarding a defendant's exercise of his right to remain silent during an interrogation violates the Due Process Clause of both the state and federal constitutions"). To allow the "[u]se of * * * silence in the state's case-in-chief would force

defendants either to permit the jury to infer guilt from their silence or surrender their right not to testify and take the stand to explain their prior silence." *Leach* at ¶ 31.

{¶34} Neal challenges two instances of alleged improprieties during his jury trial. In the first instance he contests the following exchange during the direct examination of Lieutenant Gregg Cluley of the Logan Police Department in the state's case-in-chief :

> Q. You had a chance to talk to Mr. Neal. What did he say to you when you interviewed him -- Terry Neal?
>
> A. After reading Terry Neal his Miranda warnings, he disclosed that he did not want to say anything at that time and that was the end of the interview.

{¶35} The second instance he contests is the following prosecutor's statement in closing argument:

> Last point folks I'd like you to think about. Lieutenant Cluley went to him and asked to talk to him, for him to give his version of what happened. What his response? I don't want to talk to you, I want a lawyer. Never denied it. That was his opportunity. He never denied it. He had a chance to be able to tell Lieutenant Cluley his version and he chose not to do so.

{¶36} We generally use a de novo standard of review to assess errors based upon violations of constitutional law. *See State v. Bryant*, 4th Dist. No. 14CA3434, 2014-Ohio-5535, ¶ 12. However, Neal's trial counsel did not object at trial to the foregoing testimony of Lt. Cluley or the closing argument of the prosecutor so our review is limited to whether this testimony and argument constituted plain error under the Fifth Amendment. *See, e.g., State v. Lang*, 129 Ohio St.3d 512, 2011–Ohio–4215, 954 N.E.2d 596, ¶ 123 (failure to object to testimony at trial forfeits all but plain error on appeal). Appellate courts take notice of plain error "with the utmost caution, under

exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *State v. Bethel*, 4th Dist. Jackson No. 13CA11, 2014–Ohio–3861, ¶ 7. To prevail, Neal "must show that an error occurred, that the error was plain, and that but for the error, the outcome of the trial clearly would have been otherwise." *State v. Mammone*, 139 Ohio St.3d 467, 2014–Ohio–1942, 13 N.E.3d 1051, ¶ 69. The defendant bears the burden of proof on the issue. *See State v. Cooper*, 170 Ohio App.3d. 418, 2007–Ohio–1156, 867 N.E.2d 493, 9131 (4th Dist.) ("The defendant carries the burden to establish the existence of plain error, unlike the situation in a claim of harmless error, where the burden lies with the state").

**{¶37}** In attempting to discern exactly what is being argued in this assignment of error we ordered the parties to submit supplemental briefs on the state's ability to present evidence and comment on a criminal defendant's right to remain silent. Upon review of these supplemental briefs and the initial briefs, we conclude that Neal did not establish plain error regarding Lt. Cluley's testimony and the state's closing argument.

**{¶38}** Neal's third assignment of error is specifically limited to contesting the "admission of evidence relating to defendant's invocation of his right to counsel." Lt. Cluley's testimony did not mention Neal's invocation of his *right to counsel*. Although this testimony did note Neal's invocation of his right to remain silent and the right to counsel is derivative of that right, one can invoke the right to remain silent without invoking the right to counsel. Neal's assigned error does not challenge evidence relating to his broader right to remain silent. Nor does his assigned error contest the state's closing argument—it contests only the admission of *evidence* relating to his

invocation of his right to counsel, not the prosecutor's closing argument. Although the state's closing argument did reference the invocation of his right to counsel, it did not constitute evidence.  *See State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 164 (arguments of counsel are not evidence).  Because Neal's arguments do not address in his assignment of error, we need not address them in the context of plain error.  " Appellate courts review assignments of error—we sustain or overrule assignments of error and not mere arguments. "  *State v. Lamb*, 4th Dist. Highland No. 14CA3, 2014-Ohio-2960, ¶ 13, quoting *State v. Harlow*, 4th Dist. Washington No. 13CA29, 2014-Ohio-864, ¶ 10; *see also State v. Delawder*, 4th Dist. Lawrence No. 14CA12, 2015-Ohio-1857, ¶ 29.

{¶39}  Even though it appears that the evidence concerning the invocation of the right silence and the prosecutor's argument amounted to error, it does not rise to the plain-error level. Our reluctance to find plain error is based upon the fact there was overwhelming evidence to establish Neal's guilt of the crimes.  *Bryant*, 2014-Ohio-5535, at ¶ 24. In other words, Neal cannot show that but for the contested testimony and prosecutor's argument about his silence, the outcome of the trial would have been different. H.G. provided credible, detailed evidence concerning the offenses committed by Neal in Counts IX, X, and XIV; her friend Chelsie, her brother G.G., and the pizza manager corroborated pertinent aspects of her testimony; and DNA evidence established that her DNA was identified as being on Neal's boxer shorts. Thus, we cannot say there is a reasonable probability that the outcome of the trial would have been different absent the contested evidence and argument. Therefore, Neal does not meet his burden of proving plain error under the Fifth Amendment.

**{¶40}** Neal's alternative claim that his trial counsel's failure to object to the contested evidence and argument constituted ineffective assistance of counsel likewise fails because he has not established prejudice, i.e., a reasonable probability that, but for his trial counsel's errors, the result of the proceeding would have been different. *See State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This is because of the overwhelming evidence establishing Neal's guilt of the crimes.

**{¶41}** Nonetheless, we do not endorse the state's reference in its case-in-chief to Neal's invocation of his right to remain silent. The state contends that counsel's opening statement that he anticipated Neal would testify and deny that he committed the charged offenses opened the door to this evidence. Not so. That is, "[a] prosecutor may * * * reference a defendant's choice to remain silent if it is a *fair* reply to the defense's theory of the case or legal argument—such as the defense's assertion that the defendant was not given the opportunity to speak on his or her own behalf." (Emphasis sic.) *United States v. Six*, 600 F.Appx. 346, 353 (6th Cir.2015), citing *Hall v. Vasbinder*, 563 F.3d 222, 233 (6th Cir.2009). Using a criminal defendant's silence as substantive evidence of guilt in its case-in-chief is not a fair reply to a general denial in which there is no contention that the defendant was not given the opportunity to speak.

**{¶42}** Nevertheless, based on the specific facts before us, including the specific argument made by Neal on appeal and the overwhelming evidence of Neal's guilt of the crimes, we overrule Neal's third assignment of error.

### D. Manifest Weight of the Evidence

**{¶43}** In his fourth assignment of error Neal argues that his four convictions for unlawful sexual conduct with a minor were against the manifest weight of the evidence. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011–Ohio–6254, 960 N.E.2d 955, ¶ 119; *State v. Wade*, 4th Dist. Ross No. 14CA3435, 2015-Ohio-997, ¶ 29.

**{¶44}** For his conviction on Count V, which we reversed for insufficient evidence in our disposition of his first assignment of error, Neal's manifest-weight argument is moot and we need not address it. *See State v. Scott*, 4th Dist. Scioto No. 02CA2841, 2002-Ohio-7083, ¶ 14("We do not address Scott's argument that his conviction is against the manifest weight of the evidence as it is moot due to our finding that his conviction is supported by insufficient evidence"); App.R. 12(A)(1)(c).

**{¶45}** For his remaining three convictions the state introduced evidence that Neal engaged in oral, anal, and vaginal sex with H.G. in separate incidents within the times alleged in the indictment. R.C. 2907.04(A) provides that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that

regard." "Whoever violates R.C. 2907.04(A) is guilty of unlawful sexual conduct with a minor." R.C. 2907.04(B).

**{¶46}** Neal does not dispute that he is over 18 years old, that he knew that H.G. was 13 years old at the time of the offenses, and that H.G. was not his spouse. Instead, he claims he did not have sexual conduct with H.G. "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex." R.C. 2907.01(A). For the Count XIV incident, H.G. testified that on Thanksgiving evening 2012 Neal asked her to perform oral sex on him and her friend Chelsie testified that she witnessed it. For the Count IX incident, H.G. testified that on June 13, 2013, Neal engaged in anal intercourse with her, her brother G.G. corroborated that he came into the room and witnessed Neal and H.G. jump up from the love seat when he told them he was going to order pizza. For the Count X incident, H.G. testified that later that evening after they consumed pizza, Neal had vaginal intercourse with her. H.G. identified the blue boxer shorts that Neal wore during the Count IX and X incidents and DNA testing of them confirmed H.G.'s DNA on them.

**{¶47}** Neal challenges the credibility of this evidence. Nevertheless, "[a] jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014–Ohio–1941, ¶ 23. "We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 28.

**{¶48}** Based on the evidence establishing that Neal had unlawful sexual conduct with H.G. during the charged periods for Counts IX, X, and XIV, the jury properly found the essential elements of the crimes proved beyond a reasonable doubt; it did not clearly lose its way or create a manifest miscarriage of justice. We overrule Neal's fourth assignment of error.

### E. Allied Offenses of Similar Import

**{¶49}** In his fifth assignment of error Neal argues that the trial court erred in failing to merge Counts IX and X—the two offenses of unlawful sexual conduct with a minor that occurred on June 13, 2013—because they were allied offenses of similar import. Neal did not raise this issue during the proceedings below so he forfeited all but plain error.

**{¶50}** The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," and this protection applies to Ohio citizens through the Fourteenth Amendment and is additionally guaranteed by Article I, Section 10 of the Ohio Constitution. This constitutional protection prohibits multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

**{¶51}** The General Assembly enacted R.C. 2941.25 to specify when multiple punishments can be imposed:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶52}** Appellate courts apply a de novo standard of review in an appeal challenging a trial court's determination of whether offenses constitute allied offenses of similar import that must be merged under R.C. 2941.25. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28; *State v. Cole*, 4th Dist. Athens No. 12CA49, 2014-Ohio-2967, ¶ 7. Merger is a sentencing question, and the defendant bears the burden of establishing his entitlement to the protection of R.C. 2941.25. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

**{¶53}** The Supreme Court of Ohio recently clarified the applicable analysis in determining when two offenses merge under R.C. 2941.25 in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import." *Id.* at paragraph one of the syllabus. "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus.

**{¶54}** The offenses of unlawful sexual conduct with a minor that Neal committed on June 13, 2013 were committed separately and with separate animus. The crimes concerned different sexual conduct—the first incident involved anal intercourse and the

second incident involved vaginal intercourse—separated by a substantial period of time. In fact the act of anal intercourse was interrupted when G.G. walked into the room and asked if Neal and H.G. wanted pizza. Subsequently, someone ordered the pizza, Christy's Pizza delivered the order, and they ate it. Only after G.G. and his girlfriend returned to their room and A.G. went to his room, did the act of vaginal intercourse occur. Clearly these two acts cannot be described as one continuous course of conduct given their discrete ending and beginning, which occurred over a considerable passage of time and unrelated conduct. *See, e.g., State v. Carpenter*, 6th Dist. Erie No. E-00-033, 2002-Ohio-2266, ¶ 78 (crimes were not allied offenses of similar import when they involved different sexual activities).   Neal's animus for the first offense was to have anal intercourse with H.G. and his animus for the second offense was to have vaginal intercourse with her.  Moreover, the two incidents were so separated in time and intervening acts that they amount to separate conduct. The trial court did not err in failing to merge these offenses because they were not allied offenses of similar import. We overrule Neal's fifth assignment of error.

## F.  Consecutive Sentences

**{¶55}**  In his sixth assignment of error Neal asserts that the trial court erred in imposing consecutive sentences for his crimes.  When reviewing felony sentences we apply the standard of review set forth in R.C. 2953.08(G)(2).  *See State v. Brewer*, 2014–Ohio–1903, 11 N.E.3d 317, ¶ 33 (4th Dist.) ("we join the growing number of appellate districts that have abandoned the *Kalish* plurality's second-step abuse-of-discretion standard of review; when the General Assembly reenacted R.C. 2953.08(G)(2), it expressly stated that '[t]he appellate court's standard of review is not

whether the sentencing court abused its discretion' "). R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds that "the record does not support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law."

{¶56}  Under the tripartite procedure set forth in R.C. 2929.14(C)(4), prior to imposing consecutive sentences the trial court had to find that: (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) as applicable here, at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more multiple offenses was so great or unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of the offender's conduct.  *See State v. Baker*, 4th Dist. Athens No. 13CA18, 2014–Ohio–1967, ¶ 36. The trial court "is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into the sentencing entry, but it has no obligation to state reasons to support its findings."  *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, syllabus. The trial court here complied with R.C. 2929.14(C)(4) by making the requisite findings at the sentencing hearing, and incorporating them in its original and amended sentencing entries.

{¶57}  Furthermore, notwithstanding Neal's claims to the contrary, the record supports the trial court's findings.  Neal plied the impressionable 13-year-old daughter of

his girlfriend with cigarettes, alcohol, and marijuana so he could engage in unlawful

sexual conduct with her and threatened her with violence to her and to her family if she

did not comply.  The evidence further established that Neal had six prior felony

convictions and additional misdemeanor convictions, including offenses of violence like

domestic violence and assault.  Because the record supports the trial court's imposition

of consecutive sentences, we overrule Neal's sixth assignment of error.

### G.  Use of Restraints

{¶58}  In his seventh assignment of error Neal contends that the trial court erred

in permitting the sheriff to use all necessary restraints.  Prior to trial, Neal filed a motion

to permit him to appear in civilian clothing and without restraints at all proceedings.  In

the motion, Neal requested an evidentiary hearing if the court was not inclined to grant it

on the record as it existed at that time.  The focus of his motion was his concern that

any restraints would be visible to the jurors.  He also suggested that restraints would

inhibit his ability to communicate with his lawyer and cause him fear and anxiety that

would affect his demeanor.  The trial court granted the motion in part by allowing Neal to

appear in civilian clothing.  The trial court nevertheless permitted the sheriff to use "all

necessary restraints," with the caveat that the sheriff "ensure, as much as possible, that

the jury does not see the defendant in restraints."

{¶59}  Absent unusual circumstances, no one should be tried while restrained

because the use of visible restraints tends to erode the presumption of innocence that

the justice system attaches to every defendant.  *State v. Neyland*, 139 Ohio St.3d 353,

2014-Ohio-1914, 12 N.E.3d 1112, ¶ 82, citing *Illinois v. Allen*, 397 U.S. 337, 344, 90

S.Ct. 1057, 25 L.Ed.2d 353 (1970), and *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-

5304, 776 N.E.2d 26, ¶ 79.  However, the use of restraints, including electronic stun belts, is left to the trial court's sound discretion because the court is in the best position to consider the accused's actions inside and outside the courtroom.  *Neyland* at ¶ 82; *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 104.  Although the trial court should normally conduct a hearing prior to ordering a defendant to wear restraints, this is not an absolute rule where the facts and circumstances disclose a compelling need for these security measures.  *Franklin* at ¶ 82.

{¶60}  Neal does not disclose what type of restraints were used on him at trial, and whether they were visible to the jury.  He also does not claim on appeal that restraints impeded him from communicating with his attorney, affected his testimony, or impaired his demeanor during trial.  The record does not show any negative impact on Neal from the trial court's order.  The state claims that he wore a non-visible stun belt underneath his clothing.  Assuming that the state is correct, Neal's history of violence—including domestic violence—and numerous criminal convictions supported the trial court's order.

{¶61}  The trial court did not abuse its broad discretion in ordering that the sheriff be permitted to use all necessary restraints, with a caveat that the restraints should not be visible to the jury.  *See State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 343 (rejecting claim that trial counsel was ineffective for failing to request a hearing on the necessity of the defendant wearing shackles during trial where the record did not indicate that he was wearing visible restraints at trial); *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 104 (defendant was not prejudiced by trial court order that he wear a stun belt during jury trial where he did not claim that

the device caused him physical discomfort or interfered with his ability to communicate with counsel); *State v. Chester*, 10th Dist. Franklin No. 08AP-1, 2008-Ohio-6679, ¶ 14 (any error in ordering defendant to be shackled during trial was harmless because, among other reasons, defendant did not claim that he was unable to effectively communicate with his attorney with regard to his legal representation).  We overrule Neal's seventh assignment of error.

## IV. CONCLUSION

**{¶62}**  Having sustained Neal's first assignment of error, we reverse his conviction for unlawful sexual conduct with a minor as charged in Count V of the indictment because it was not supported by sufficient evidence and remand the cause to the trial court to discharge him on that count.  Having overruled Neal's remaining assignments of error, we affirm his remaining convictions and sentence.

JUDGMENT AFFIRMED IN PART,<br>
REVERSED IN PART,<br>
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
       William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**